U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

FEB 10 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **OAK PARK HEALTH CARE CENTER, LLC** | : | DOCKET NO. 09 CV 217 |
| VS. | : | JUDGE MINALDI |
| **CHARLES E. JOHNSON, ACTING SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, KERRY WEEMS, ACTING ADMINISTRATOR OF THE CENTERS FOR MEDICARE & MEDICAID SERVICES** | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Temporary Restraining Order (hereinafter "TRO"), [doc. 2], filed by Oak Park Health Care Center, LLC (hereinafter "Oak Park") on February 9, 2009. Oak Park's Medicare and Medicaid provider agreements are set to terminate on February 11, 2009, and accordingly, this Court heard oral argument on February 10, 2009. The defendant, the Government, did not have an opportunity to file a written opposition but was able to verbally present its opposition in court. At the conclusion of oral argument, the Court ordered that a reinspection occur by 4 p.m. on February 10, 2009. The fourth re-inspection revealed four violations. [doc. 5]. Having been unable to resolve this matter via a re-inspection, this Court now considers the TRO.

## FACTS

Oak Park is a provider of nursing home services operating a 177-bed skilled nursing facility ("SNF") in Lake Charles, Louisiana, which opened in June 30, 2008. Oak Park houses 122

1

residents, 83 of whom are financed by Medicaid and 12 by Medicare.[1]

Essentially, over the course of an initial survey and three re-visits, Centers for Medicare and Medicaid Services (hereinafter "CMS"), the agency within the U.S. Department of Health and Human Services (hereinafter "DHHS") charged with administrating Medicaid and Medicare, found Oak Park to be not in substantial compliance.[2] These visits occurred on August 7, 2008; October 24, 2008; December 17, 2008; and January 20, 2009.[3] Following each visit, Oak Park was informed that if it did not achieve substantial compliance by February 7, 2009, it would recommend termination of the provider agreement on or before February 7, 2009.[4]

On January 27, 2009, following the third re-visit, CMS' survey agency sent Oak Park a letter notifying Oak Park that no more than three visits are authorized during a non-compliance cycle, and it was therefore recommending that Oak Park's Medicare provider agreement be terminated in fifteen days.[5] CMS sent Oak Park a letter that it was extending the termination date to February 11, 2009, to permit publication of notice of termination.[6] On February 5, 2009, Oak Park allegedly received notice for the first time that its Medicaid provider agreement would also terminate on February 11, 2009.[7] The notice, as each previous notice, stated that Oak Park could appeal the finding of

---

[1] Pl.'s Mem. in Support of TRO, at 2. Collectively, Medicaid and Medicare generate 75% of Oak Park's revenue. *Id.*

[2] *Id.* at 3-8.

[3] *Id.*

[4] *Id.*

[5] *Id.* at 7.

[6] *Id.*

[7] *Id.*

2

noncompliance with an administrative law judge.[8]

Oak Park appealed the January 27, 2009 decision to the administrative law judge and filed for expedited review; however, the review will not occur before Oak Park's provider agreement terminates on February 11, 2009. Accordingly, Oak Park seeks a TRO (and will also seek a preliminary injunction) to prevent the Government from terminating its Medicaid and Medicare provider agreements on February 11, 2009.

## RULE 65(b)

Fed. R. Civ. P. 65(b) articulates the procedure by which this Court may issue a TRO. "In order to justify the issuance of a temporary restraining order, a plaintiff must show a likelihood of success on the merits, that there is a threat of irreparable injury, that the threatened injury outweighs any harm the injunction might cause the defendants, and that the injunction will not impair the public interest." *Scott v. Livingston Parish Sch. Bd.*, 548 F. Supp.2d 265, 266-67 (M.D. La. 2008).

## ANALYSIS

Oak Park argues that if CMS terminates its Medicare and Medicaid provider agreements, the government will no longer pay for the care of 95 out of 122 current residents, which will also make Oak Park's operations not viable for the remaining private residents. Moreover, the termination would require Oak Park's residents to move, which constitutes an irreparable injury given that, of its current residents, 77 suffer from dementia, schizophrenia, anxiety, or depression, 65 are developmentally disabled or mentally challenged, 46 are more than 80 years old, and 10 are categorized as hospice residents with life expectancies of less than six months. Oak Park also argues that the ALJ has no authority to issue an injunction maintaining the status quo pending a hearing,

---

[8] *Id.* at 8.

and therefore its only remedy lies with this Court. *See, e.g.*, Pl.'s Ex. A (ALJ Opinion 05/25/2006) (stating "I have no authority to review CMS' decision to impose a remedy nor its choice of remedies").

Given the expedited nature of this motion, the Government did not have sufficient time with which to prepare a brief; however, the Government did present its opposition via oral argument. At oral argument, the Government argued that this Court lacks jurisdiction to grant any injunctive relief because Oak Park did not exhaust its administrative remedies before seeking judicial review. The Government, recognizing that there are exceptions to the exhaustion requirement, further argued that the exceptions did not apply.

As the Fifth Circuit has recognized, exhaustion of administrative remedies can be waived, which occurs "when a plaintiff asserts a collateral challenge that can not be remedied after the exhaustion of administrative review." *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999). Furthermore, "the exhaustion requirement is applicable to a constitutionally-based claim when that claim is 'inextricably intertwined' with a substantive claim of administrative entitlement." *Id.* at 286. Here, Oak Park questions the Government's ability to terminate Oak Park's provider agreements before an ALJ hearing, which Oak Park maintains is a violation of its procedural due process. Other courts in similar nursing home cases have found that procedural due process claims are "wholly collateral to the determination of benefits." *See, e.g., Ridgeview Manor of the Midlands, L.P. v. Leavitt*, 2007 U.S. Dist. LEXIS 26249, *13-17 (D.S.C. 04/09/2007) (noting that if the plaintiff asked the court to set aside the substantive decision to terminate the provider agreement, then administrative exhaustion would be required; however, the plaintiff was instead requesting a stay of the termination of the plaintiff's provider agreement until

the plaintiff had been afforded administrative review).

Moreover, even if this claim is not collateral, this Court finds that "the facts of this case give rise to a sufficient threat of irreparable harm so as to justify waiver of the administrative exhaustion requirement." *See Affiliated*, 164 F.3d at 286. In *Affiliated*, noting that it was a "difficult issue," the Fifth Circuit found no irreparable harm because the plaintiff was a home health-care agency and there was no evidence that a change in provider status would deprive its patients of adequate home based health care. *Id.* at 286. In this case, Oak Park provides nursing home services. This Court finds the distinction beyond significant, because in *Affiliated*, there was no relocation risk to residents.

Having found no Fifth Circuit cases addressing irreparable injury in the context of nursing homes, this Court is persuaded by the jurisprudence from district courts in other circuits. *See, e.g., Int'l Long Term Care, Inc., d/b/a Peninsula Health Care v. Shalala*, 947 F. Supp. 15 (D.D.C. 1996) (finding that a long-term skilled nursing facility's provider termination presented threat of irreparable injury to residents, where 120 out of 130 residents were Medicaid or Medicare patients, and where at least 49 suffered from dementia or another psychiatric illness, and that the threat of irreparable injury likely to be suffered by the residents alone was sufficient to obtain preliminary injunctive relief); *Mediplex of Massachusetts, Inc., d/b/a Sunrise Care & Rehabilitation for Randolph v. Shalala*, 39 F. Supp.2d 88, 98-99 (D. Mass. 1999) (noting that Mediplex has an interest in protecting the health of its residents and may assert harm to them as irreparable harm for the purpose of a preliminary injunction motion, and that the potential for "transfer trauma, a condition which commonly afflicts nursing home residents who are suddenly forced to vacate familiar surroundings and can even cause death" justified granting a preliminary injunction, as did the potential for

5

irreparable harm to Mediplex itself).[9]

Terminating provider benefits to a nursing home would require an extremely vulnerable population to undergo the trauma of moving to a new facility. The irreparable injury is not limited to the patients, as the burden often falls on the family members to locate a suitable facility, especially here where the majority of residents are either mentally impaired or suffering from mental illness. Moreover, in today's fragile economic climate, this Court is also cognizant of the effect a closure would have on Oak Park's employees.

This Court further finds that the Government shall not incur harm from the TRO. *See, e.g., Int'l Long Term Care*, 947 F. Supp. at 20 (finding a TRO did not harm the Government's administrative process). Moreover, this Court does not find that a TRO will disservice the public interest. *See id.* (noting that there is a "compelling public interest in providing timely and uninterrupted health care funding").

As for the remaining prong, the likelihood of success on the merits, this Court finds that Oak Park has presented a sufficiently substantial case that it might well prevail on the merits after it has exhausted its administrative remedies, and therefore, this Court finds that the irreparable harm likely to be suffered by the residents is sufficient for a TRO to issue. *See id.* at 19; accordingly,

---

[9] Cognizant of the fact that the TRO was filed yesterday, this Court notes that although the Government purports to represent the interests of the Oak Park residents, the Government has not presented any evidence that these residents wish to see Oak Park close. Oak Park, by contrast, has presented affidavits of residents stating that they do not wish to leave Oak Park, they like the facility, and enjoy the company of the other residents. Pl.'s Ex. 8 [doc. 1].

IT IS ORDERED that the Motion for TRO [doc. 2] is hereby GRANTED.

Lake Charles, Louisiana, this __10__ day of __February__, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE